MYRON PARDEE and Others, Respondents, v. D. JACKSON STEWARD, Appellant.

*Foreclosure of a mortgage on a leasehold estate — effect of a sale upon a subsequent lease when the lessor is not made a party — an assignee of a lease is liable for rent unless he has parted with his whole term.*

By a lease in fee, executed in 1848, the plaintiffs' predecessors conveyed a lot on the Varick canal, in Oswego, to the lessees therein named, with the right to draw from the canal one run of first-class water, to be used only upon the lot, for any purpose except for a flouring, grist or saw-mill. By a second lease they conveyed to one Randall, who was grantee of a part of said lot, one run of first-class and two runs of second-class water. The first lease reserved an annual rent of $100, and the second of $500, and each contained covenants by which the lessees bound themselves, their heirs and assigns, to pay the said sums and all taxes that might be assessed upon the premises. After these leases had been duly recorded, and on July 1, 1871, one Wilson, who had acquired the rights of the lessees, executed a mortgage for $15,000 upon the lot and water rights, which was recorded August 20, 1872. August 6, 1872, a third lease was given to Wilson extending the purposes for which the water might be used under the two leases above mentioned, and reserving an additional rent of $400, making $1,000 in all, which the lessee, for himself, his heirs and assigns, covenanted to pay. In 1873, after the third lease had been recorded, an action was brought to foreclose the mortgage, to which the lessors were not made parties. Under a judgment entered therein and in July, 1874, the lot and rights were sold to the defendant, who took possession of the premises, and has since continued to occupy them. The defendant having paid the $1,000 rent from the time of his purchase until November, 1880, and then refused to make further payments, this action was brought to recover the rents subsequently falling due.

*Held,* that as the lessors were not made parties to the foreclosure suit their rights were not affected by the judgment therein, and that as the defendant had entered into possession of the premises and enjoyed the rights conferred by the leases, he was liable for the rent accruing thereunder.

That the defendant was subject to the obligation of the third · lease, given subsequent to the mortgage and prior to its foreclosure, as well as to that of the two prior leases,

December 8, 1880, the lot was sold to the city of Oswego for non-payment of taxes for a term of fifty years. Subsequently the city's rights therein were transferred to one Buckout, who received a declaration of sale, but never took possession of the premises nor attempted to exercise any control over them.

*Held,* that this sale did not relieve the defendants from liability, as the leases were perpetual, while the tax deed was for fifty years only.

An assignee of a lease, or a grantee of premises subject to a rent charge running with the land, can terminate his liability only by parting with his entire term or estate.

APPEAL from a judgment, entered upon the decision of a justice of this court, at a Special Term held at the city of Oswego, in February, 1884.

This action was brought to recover the rent reserved in three perpetual leases, executed by the plaintiffs and their predecessors to different persons, under each of which it is alleged the defendant became liable as grantee of the demised premises.

The first lease, dated November 1, 1848, ran to Randall and Clark, as lessees, covered lot 52 on the Varick canal in the city of Oswego, with a right to draw from said canal one run of first class water, to be used only on said lot, but for any purpose except a flouring, grist or saw mill, and reserved a rent of $100 a year, which, with all taxes to be assessed upon the premises, the lessees, for themselves, their heirs and assigns, covenanted to pay.

The second lease, dated October 1, 1858, ran to Margaret J. Randall, to whom, in the meantime, part of said lot had been conveyed, covered one run of first-class and two runs of second-class water, to be used only upon her part of the lot, but for any purpose except a saw mill, reserved an annual rent of $500, and contained the same covenants for the payment of rent and taxes by the lessees, their heirs and assigns.

The third lease, dated August 6, 1872, ran to James Wilson, who had acquired the rights of the previous lessees, covered the water rights embraced in the two preceding leases, but permitted the water provided for by lease number one to be used for any purpose except a saw mill, and that provided for by lease number two to be used on any part of said lot, and in consideration of these privileges the lessee agreed to pay an increased annual rent of $400, making

$1,000 in all, which for himself, his heirs and assigns, he covenanted to pay, and charged the payment thereof upon the land and appurtenances. The preceding leases, and all covenants therein, except as expressly modified, were continued in force. After leases numbers one and two had been duly recorded, and on the 1st of July, 1871, said James Wilson executed a mortgage for $15,000 on said lot and water rights to the International Trust Company, which was recorded August 20, 1872. The third lease was also recorded on that day.

On the 26th of May, 1873, and after the third lease had been recorded, said trust company commenced an action to foreclose said mortgage, making said Wilson and wife parties thereto, but not including the plaintiffs or their predecessors therein. The action proceeded to judgment in the usual way, and on the 3d of July, 1874, the premises and rights covered by the mortgage were sold and conveyed by the sheriff to the defendant, who took possession and has occupied them ever since, except that he conveyed them to Oakley and Place, by deed dated June 5, 1878, and recorded October 28, 1878, but received a reconveyance dated November 13, 1878, and recorded November 23, 1878, and during the interval between the dates of these deeds, or between the dates of the record thereof, it does not appear who was in possession. The defendant paid the water rent at the rate of $1,000 a year, from the time of his purchase until November, 1880. On the 8th of December, 1880, said lot 52 was sold to the city of Oswego, under the unpaid city tax of 1878, for the period of fifty years. Subsequently the city transferred its rights to one Buckout, who received a deed or declaration of sale June 5, 1882, but has never taken possession of the premises, nor attempted to exercise any control over them. The tax deed mentions simply lot 52, but is silent as to any water right.

The building on said lot was, without defendant's fault, wholly destroyed by fire, on the 8th of April, 1881, since which time he has done nothing with or to the premises, except on one occasion through his agent, to repair the canal wall in front thereof.

The Special Term decided that the third lease was not invalidated by the foreclosure, "but passed, with its benefit and its burden, to the defendant, as purchaser at the foreclosure sale," and held the defendant liable for the unpaid rent.

Judgment having been entered accordingly, the defendant appealed therefrom.

*Porter M. French,* for the appellant.

*Edwin Allen,* for the respondents.

VANN, J :

The leases that were executed and recorded before the mortgage was given, were not affected by the foreclosure. The covenants contained therein ran with the land, and bound the grantees thereof. *Post* v. *Kearney,* 2 N. Y., 394; *Dolph* v. *White,* 12 id., 296, 301; *Van Rensselaer* v. *Hays,* 19 id., 68; *Van Rensselaer* v. *Read,* 26 id., 558.)

The third lease was executed and recorded after the mortgage, through which the defendant derived title, but before the commencement of the action to foreclose the same. As the lessors were not made parties to the foreclosure suit, their rights were not cut off by the judgment or the sale thereunder. (*Brainard* v. *Cooper,* 10 N. Y., 356.) The lessee, who was also the mortgagor, was a party, and his equity of redemption was foreclosed, but the question arises, did the purchaser at the foreclosure sale take the water rights which the mortgagor acquired by the third lease given after the execution of the mortgage? If he obtained the right to use the water freed from the restrictions in the old leases, or, in other words, the benefits of the third lease, he must bear its burdens also. It is now settled that the effect of a deed in foreclosure is to vest in the purchaser the entire interest and estate of the mortgagor and mortgagee as of the date of the mortgage, and unaffected by subsequent incumbrances and conveyances by the mortgagor. (*Rector, etc., Christ's Church* v. *Mack,* 93 N. Y., 488; 2 R. S., 192, § 158; Code Civil Pro., § 1632.)

In the case last cited, however, the plaintiffs, who sought to retain the benefit of an easement reserved by them upon conveying a lot which was subject to a mortgage, were made parties to the foreclosure of such mortgage. The court held that the purchaser at the foreclosure sale took the absolute title unincumbered by the easement, and that the plaintiffs to save their rights should have appeared in the action, and by offering to bid the full amount of

the mortgage and costs, subject to the easement, sought to have the judgment modified so as to direct such a sale. But where, as in this case, the persons holding the subsequent lien or interest were not parties to the foreclosure action, and who could not appear and protect their rights in the manner suggested by the Court of Appeals, it is still unsettled whether they, as against the purchaser, can enforce covenants running with the land made by the mortgagor after he gave the mortgage. This question, in substance, was thoroughly discussed on both sides, but not decided in *Packer* v. *The Rochester and Syracuse Railroad Company* (17 N. Y., 283). Judge DENIO maintained that the purchaser holds by title paramount the estate as held by the mortgagor before the mortgage, while Judge PRATT insisted that as to persons not parties to the foreclosure he holds as grantee from the mortgagor as òf the date of the foreclosure.

With great deference we think that the latter is the correct position as applied to the circumstances of this case. As the rights of the lessee under the third lease were cut off, while the rights of the lessors were not affected by the foreclosure, the latter can still collect the rent from some one while the former cannot enjoy the benefits for which rent is paid. As the lessors can still collect rent it follows that they must perform on their part, and therefore some one can have the benefit of such performance, or the right to use the water, freed from the restrictions in the old leases. No one but the owner of lot 52 can enjoy this right, because the water, according to all the leases, can be used nowhere else. Hence the defendant, who through the sheriff's . deed became the owner of lot 52, can enjoy the benefits of the third lease and he must, therefore, bear its burden. He cannot enjoy the right free from the conditions upon which it was granted.

The water rent of $1,000 still remains a charge upon the premises notwithstanding the foreclosure, and the defendant took the land subject to that charge. As the lease was recorded he had constructive notice of the lien and the covenants and accepted title subject to them. (*Phœnix Ins. Co.* v. *Con. Ins. Co.*, 87 N. Y., 400, 408). This lien might have been, but was not extinguished by the foreclosure. It might have been extinguished by opening the foreclosure suit and bringing in the lessors as parties, but as long as the

defendant continues to own the premises subject to that lease, with the covenants therein in full force as to the lessors, they are binding upon him as owner of the land with which such covenants run. As the water could be used only on lot 52 and the rent was a charge on lot 52, and the covenant to pay rent ran with lot 52; that lot could not be conveyed either voluntarily or by operation of law without making the purchaser liable for the rent, unless the rights of the lessors were in some way extinguished. Title, simply, to lot 52, with the third lease in force as to the lessors, requires performance of the covenant to pay rent. By force of the contract embraced in the lease, any grantee of the premises by merely accepting title becomes obligated to keep that covenant. If, instead of the mortgage in question, a mortgage upon the Varick canal, prior to the third lease, had been foreclosed and the plaintiffs, but not the owner of lot 52, had been made parties, would not the purchaser be entitled to recover the rent from such owner? His right to use the water and hence his obligation to pay for it would not be affected by the foreclosure. That obligation would not, in the case supposed, be discharged by payment to the plaintiffs because their rights would have been extinguished by the foreclosure. Therefore, unless he had the water free from rent, he would have to pay to the purchaser. So, in the case under consideration, unless the defendant can use the water rent free he must pay the rent reserved to the plaintiffs. (Thomas on Mortgages, 366; *Hart* v. *Wandle*, 50 N. Y., 381; *Vanderkemp* v. *Shelton*, 11 Paige, 28.)

The sale of the premises for taxes did not relieve the defendant from liability. The leases from the plaintiffs and their predecessors were perpetual, while the tax deed was for fifty years only. An assignee of a lease or a grantee of demised premises subject to a rent charge running with the land can terminate his liability only by parting with his entire term or estate. (Taylor's Landlord and Tenant, § 452; *Davis* v. *Morris*, 36 N. Y., 569; *Van Rensselaer* v. *Gallup*, 5 Den., 454, 460.)

The judgment should be affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.